IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| MICHAEL F. ALEXANDER,<br><br>    Plaintiff<br><br>vs.<br><br>ACCEPTANCE NOW, AMERICAN EXPRESS, BRIDGECREST FORMERLY DRIVETIME, CAPITAL ONE, CAPITAL ONE AUTO FINANCE, CREDENCE RESOURCE MANAGEMENT, ENHANCED RECOVERY COMPANY, FIRST PREMIER BANK, MIDLAND CREDIT MANAGEMENT, INC., PORTFOLIO RECOVERY, TBOM/OLLD CARD SERVICES, CHEX SYSTEM, INC., U.S. BANK CORPORATION,<br><br>    Defendants | 1:22-CV-00338-SPB-RAL<br><br>SUSAN PARADISE BAXTER<br>United States District Judge<br><br>RICHARD A. LANZILLO<br>Chief United States Magistrate Judge<br><br>MEMORANDUM OPINION ON DEFENDANT ACCEPTANCE NOW'S MOTION TO COMPEL ARBITRATION<br><br>ECF NO. 59 |

## I. Introduction and Background

Plaintiff Michael F. Alexander ("Alexander") initiated this *pro se* action against thirteen Defendants, including Rent-A-Center East, Inc. ("RAC"),[1] alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.*[2] *See* ECF No. 1-1. Alexander bases his claims against RAC on allegations that it fraudulently reported to Credit Reporting Agencies ("CRAs") that he owed a

---

[1] Alexander's Complaint erroneously identified RAC as "Acceptance Now." *See* ECF No. 60.

[2] Alexander filed his Complaint in the Court of Common Pleas of Erie County, Pennsylvania, on September 11, 2022, and Defendants subsequently removed the action to this Court pursuant to 28 U.S.C. § 1441 based on federal question subject matter jurisdiction conferred by 28 U.S.C. § 1331. ECF No. 1.

debt in the amount of $1,276 debt on RAC account # 8063920006789RO63920. His Complaint attaches a credit report generated by CRA TransUnion that includes this alleged debt. *See* ECF No. 1-1, p. 6, pp. 30-33. Alexander alleges that "[he] never did business with this Defendant [RAC] nor did [he] have an account with them." *Id.* For relief, he seeks compensatory and punitive damages as well as the removal of the contested debt from his credit reports.

RAC responded to the Complaint with a motion to compel arbitration and stay the proceedings pending the disposition of the above-captioned action. ECF No. 59. The Court then issued an order directing Alexander to respond to the motion by April 24, 2023. ECF No. 61. When the Court by May 8 had not received a response, it ordered Alexander to to respond by May 22 or show cause for this failure. ECF No. 64. Alexander still has not responded to RAC's motion or indicated that he intends to so.[3] For the reasons that follow, the motion will be GRANTED.[4]

## II. Legal Standard

"The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs written agreements to arbitrate in contracts involving interstate commerce," such as the one at issue here. *Murphy v. Epiq Glob. Bus. Transformation Sols., LLC*, 2022 WL 17578821, at *3 (W.D. Pa. Dec. 12, 2022). *See also* ECF No. 59-4. The Supreme Court has repeatedly emphasized "that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citations omitted). *See also* 9 U.S.C. § 4. Indeed, Section 2 of the FAA, which

---

[3] The Court further notes that Alexander has continued to file documents unrelated to RAC's motion in this action. *See* ECF Nos. 66 (Notice of Change of Address), 68 (Stipulation of Dismissal).

[4] Although all parties have not consented to the undersigned's jurisdiction, 28 U.S.C. § 636 authorizes the undersigned to rule on RAC's motion because "motions to compel arbitration and stay the proceedings are not" dispositive. *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed. Appx. 131, 133 (3d Cir. 2014).

"embodies the national policy favoring arbitration," specifies that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (quoting 9 U.S.C. § 2).

Pursuant to "the FAA, a party to an arbitration agreement may petition a United States district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" *Stolt-Nielsen*, 559 U.S. at 682 (quoting 9 U.S.C. § 4). But because arbitration is "strictly a matter of contract . . . the courts have no authority to mandate" a party to arbitrate "[i]f a party has not agreed to arbitrate." *Sanford v. Bracewell & Guiliani, LLP*, 618 Fed. Appx. 114, 117 (3d Cir. 2015) (quoting *Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir.1999)). As such, the FAA permits the Court to compel arbitration only once it has determined that (1) "there is a valid agreement to arbitrate between the parties and, if so," (2) "the merits-based dispute in question falls within the scope of that valid agreement." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022) (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)) (internal quotation marks omitted).

The standard of review to be applied "when determining whether, in a specific case, an agreement to arbitrate was actually reached" depends upon the record before the court. *Id.* at 771. The Court of Appeals for the Third Circuit has specifically instructed:

> Motions to compel arbitration are reviewed under Rule 12(b)(6) "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or ... documents relied upon in the complaint)." If the motion to compel arbitration is not based on a complaint "with the requisite clarity" to establish arbitrability or "the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did," resort to discovery and Rule 56 is proper.

3

*Sanford*, 618 Fed. Appx. at 117 (3d Cir. 2015) (quoting *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013)) (alterations in original).

Here, the Complaint and attached documents do not indicate the existence of an agreement to arbitrate. On the contrary, Alexander premises his legal claims upon the assertion that he has never done business with RAC, which, if true, would negate the existence of such an agreement. Thus, the arbitrability of Alexander's claims does not appear on the face of the Complaint or documents relied upon therein. Accordingly, the Court will employ the Rule 56 summary judgment standard to resolve the pending motion. *See e.g.*, *Cepikoff v. Stifel Fin. Corp.*, 2020 WL 4937499, at *1 (W.D. Pa. Aug. 24, 2020).

Summary judgment on the motion to compel "is only proper if 'there is no genuine dispute as to any material fact" regarding arbitrability "and the movant is entitled to judgment as a matter of law." *Antkowiak v. TaxMasters*, 455 Fed. Appx. 156, 159 (3d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the burden of "demonstrate[ing] both that a valid agreement exists and that its scope encompasses a particular dispute." *Hinnant v. Am. Ingenuity, LLC*, 554 F. Supp. 2d 576, 581 (E.D. Pa. 2008) (footnote omitted). *See Egan v. Live Nation Worldwide, Inc.*, 764 Fed. Appx. 204, 208 (3d Cir. 2019) (moving party bore the burden of proving the parties had agreed to arbitrate). Once the moving party meets its burden, the burden shifts to the party disputing arbitration to invalidate the arbitration agreement or establish that the claims at issue fall outside the agreement. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). That said, the non-moving party receives "the benefit of all reasonable doubts and inferences that may arise." *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).

Ordinarily under the Rule 56 standard, "the non-movant 'must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity' of the arbitration agreement" before the Court decides the motion. *Guidotti*, 716 F.3d at 774 (3d Cir. 2013) (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 511 (7th Cir. 2003)) (internal footnote omitted). *See also Juric v. Dick's Sporting Goods, Inc.*, 2020 WL 4450328, at *2 (W.D. Pa. Aug. 3, 2020) (quoting *Morina v. Neiman Marcus Grp., Inc.*, 2014 WL 4933022, at *6 (E.D. Pa. Oct. 1, 2014)) (if "'the complaint and its supporting documents are unclear regarding the agreement to arbitrate . . . then the Court should permit limited discovery on the factual issue of whether there is a valid arbitration agreement.") (internal quotations omitted); *Cepikoff*, 2020 WL 4937499, at *1 (denying the motion to compel in order to develop the factual record). But Alexander has not sought leave to conduct limited discovery and his failure to file a response to RAC's motion both waives this opportunity and permits the Court to treat RAC's factual assertions as undisputed. Furthermore, after careful review, the Court finds the record sufficient to allow a proper assessment of RAC's motion under the applicable standard.

**III.   Analysis**

RAC argues that Alexander agreed to arbitrate the claims asserted against it when he signed "[Lease]-Purchase Agreement Number fyu03237 for the rental of a bed" and the accompanying arbitration agreement on March 10, 2019. ECF No. 60, p. 1. RAC also contends that Alexander's FCRA, FDCPA, and ECOA claims fall within the scope of the arbitration agreement. RAC appended to the instant motion copies of a signed Lease Purchase Agreement (ECF No. 59-3), an arbitration agreement (ECF No. 59-4), and Alexander's RAC account information and history (59-5). RAC has also provided a declaration from Joel Sawyer, RAC's Senior Director of Compensation & Human Resources Information Systems, wherein he

5

authenticates the Agreements and account history and attests to the material assertions of RAC's motion. ECF No. 59-2.

### A. RAC and Alexander entered into a valid arbitration agreement.

To ascertain whether "the parties entered a valid agreement to arbitrate," the Court "look[s] to the relevant state law of contracts." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). Contract formation in Pennsylvania requires: "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Dicent v. Kaplan Univ.*, 2018 WL 4171600, at *4 (M.D. Pa. June 15, 2018), *report and recommendation adopted*, 2018 WL 4169072 (M.D. Pa. Aug. 30, 2018), *aff'd*, 758 Fed. Appx. 311 (3d Cir. 2019) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). Nevertheless, the Third Circuit counsels that, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Sanford*, 618 Fed. Appx. at 117 (quoting *Par–Knit Mills*, 636 F.2d at 54. Likewise, "[t]he Pennsylvania Supreme Court has held that an agreement to arbitrate must be 'clear and unmistakable' and cannot arise 'by implication.'" *Dicent*, 2018 WL 4171600, at *4 (quoting *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964)).

RAC's Lease-Purchase Agreement requires customers to sign an accompanying arbitration agreement. The Lease-Purchase Agreement conspicuously states: "An Arbitration Agreement comes with and is incorporated into this lease purchase agreement. You should read the Arbitration Agreement before signing this agreement." ECF No. 59-3. Additionally, the Arbitration Agreement begins with the following bolded warning: "**PLEASE READ THIS ARBITRATION AGREEMENT. IT IS BINDING AND ENFORCEABLE UNLESS YOU**

6

SEND IN A REJECTION NOTICE, AS SET OUT IN PARAGRAPH BELOW." ECF No. 59-4. The Arbitration Agreement specifies that it "is between RAC and . . . the customers who sign" it, and that by signing the Agreement, the consumer "agree[s] that, in the event of any dispute or claim between [the parties], either [the consumer] or RAC may elect to have that dispute or claim resolved by binding arbitration on an individual basis in accordance with the terms and procedures set forth in this Agreement." *Id.* The electronic signature of a "Michael Alexander" appears on the signature line of Lease-Purchase Agreement Number fyu03237 and the accompanying arbitration agreement appended to RAC's Motion. Thus, RAC has satisfied its threshold burden to demonstrate that it and Alexander entered into a valid agreement to arbitrate.

"Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent." *Dicent*, 758 Fed. Appx. 311 (citing 73 Pa. Stat. Ann. §§ 2260.301–.312). Under Pennsylvania law, "an electronic signature 'may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.'" *Dicent v. Kaplan Univ.*, 2018 WL 4171600, at *4 (M.D. Pa. June 15, 2018), *report and recommendation adopted*, 2018 WL 4169072 (M.D. Pa. Aug. 30, 2018), *aff'd*, 758 Fed. Appx. 311 (3d Cir. 2019) (quoting 73 P. S. § 2260.305). *See Schrock v. Nomac Drilling, LLC*, 2016 WL 1181484, at *3 (W.D. Pa. Mar. 28, 2016) (citing 73 P.S. § 2260.305) ("[a]n electronic record or electronic signature is attributable to a person if it was the act of the person."). Moreover, "the FAA requires only that the Arbitration Agreement be written, not that it be signed," to be enforceable. *Id.* (citing 9 U.S.C. § 2). Thus, courts have consistently rejected challenges to arbitration agreements "where plaintiffs denied agreeing to arbitration but electronic records proved otherwise." *Juric v. Dick's Sporting Goods,*

7

*Inc.*, 2020 WL 4450328, at *10 (W.D. Pa. Aug. 3, 2020) (citing *Schrock*, 2016 WL 1181484, at *3) (noting that, where the plaintiff was required to use private login information, known only to him, to electronically acknowledge an arbitration agreement, "[p]laintiff's naked assertions that he never did so are insufficient to lead the Court to conclude otherwise" [emphasis added] ); *see, e.g., id.* (listing cases).

Here, the agreements at issue bear the electronic signature of "Michael Alexander," and the record supports that Alexander provided significant personal information when he entered into the agreements. In his declaration, Joel Sawyer attests that Alexander "provided his personal information, including his address, e-mail address, and his phone number along with the Lease-Purchase Agreement," as well as "his social security number, driver's license number and state, and bank account information, which authorized RAC to charge his account for the lease payments." *ECF No.* 59-2., ¶ 4. Alexander's alleged RAC account history confirms that RAC obtained this personal information from the account holder and received a payment from the provided bank account information. Furthermore, the birthdate and telephone number shown on the account history match the birthdate and one of the telephone numbers listed on Alexander's TransUnion credit report. ECF Nos. 59-5, 1-1.[5] RAC also maintains that "[a]t no point did [Alexander] reject the Arbitration Agreement by sending such notice to RAC," ECF No. 60, p. 8, and Sawyer attests to the same after declaring that "[he] reviewed RAC's records concerning Michael F. Alexander," ECF No. 59-2, ¶ 7. RAC additionally avers that "[Alexander] continued to utilize the furniture and made an initial payment towards his Account," and cites to Sawyer's declaration, wherein he states that Alexander completed the first payment on March 10, 2019. The account history confirms this transaction, as well as Sawyer's assertion that the payment

---

[5] The ChexSystems credit report lists Alexander's birthdate as 1/24/1986. ECF No. 1-1, pp. 35.

8

came "from sources of the State of Ohio, where the Lease-Purchase Agreement was executed." ECF No. 59-2, ¶ 8.

Based on the foregoing, RAC has satisfied its threshold burden of demonstrating that it and Alexander entered into a valid agreement to arbitrate any claims or disputes. Alexander has not filed any response or evidence to dispute the properly supported assertions of RAC's motion. Accordingly, the Court will consider RAC's factual assertions regarding the arbitration agreement as undisputed. *See e.g., Murphy v. Epiq Glob. Bus. Transformation Sols., LLC*, 2022 WL 17578821, at *5 (W.D. Pa. Dec. 12, 2022) (citing Fed. R. Civ. P. 56(e)(2)).

The Court also finds that the language of the arbitration agreement does not contravene "relevant state law of contracts" or indicate that it "may be unenforceable based on a generally applicable contractual defense." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). *See Antkowiak v. TaxMasters*, 455 Fed. Appx. 156, 159 (3d Cir. 2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) ("[C]ourts may only invalidate arbitration clauses on the grounds of 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"). The requirement to arbitrate is conspicuous and delineates the boundaries of the agreement. *See e.g., Harris v. Credit Acceptance Corp.*, 2022 WL 4533854, at *2 (3d Cir. Sept. 28, 2022), *cert. denied*, 2023 WL 3440662 (U.S. May 15, 2023) ("The arbitration clause appears clearly and conspicuously in the contract"); *Dicent v. Kaplan Univ.*, 758 Fed. Appx. 311, 313 (3d Cir. 2019) (Arbitration agreement included in enrollment packet was valid where it was "clearly labeled."). RAC also gives consumers the option to reject the arbitration agreement and provides clear instructions on how to do so. Thus, Alexander has not challenged the terms of the

9

agreement, and the Court independently finds the agreement facially valid. Accordingly, the Court finds that the parties entered into a valid agreement to arbitrate.

### B. Alexander's allegations against RAC fall within the scope of the arbitration agreement.

Having found that the parties entered into a valid arbitration agreement, "the Court applies state-law principles to determine if the case at hand falls within the scope of the arbitration agreement, while giving 'due regard to the federal policy favoring arbitration.'" *Murphy*, 2022 WL 17578821, at *7 (quoting *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 521–22 (3d Cir. 2019). *See In re Remicade*, 938 F.3d at 521-22 ("[W]hile federal law may tip the scales in favor of arbitration where state interpretive principles do not dictate a clear outcome, may displace state law through preemption, or may inform the interpretive analysis in other ways, applicable state law governs the scope of an arbitration clause....") (internal citations omitted). "In assessing whether a particular dispute falls within the scope of an arbitration clause," the Third Circuit instructs courts to "focus [ ] on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) (citing *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (quotation marks omitted) (alteration in original)). If the court determines that the parties' dispute falls within the scope of the arbitration agreement, "it must stay a pending lawsuit on application of one of the parties until such arbitration is concluded and order the parties to proceed to arbitration consistent with their agreement." *Id.* (citing 9 U.S.C. §§ 3-4; *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004)).

The Court "begin[s] by 'carefully analyz[ing] the contractual language' in the arbitration clause at issue." *CardioNet*, 751 F.3d at 173 (citing *Trap Rock Indus., Inc. v. Local 825, Int'l*

*Union of Operating Eng'rs*, 982 F.2d 884, 888 (3d Cir. 1992)). RAC's arbitration agreement begins by instructing that "[t]his agreement to arbitrate is intended to be interpreted as broadly as the FAA allows." ECF No. 54-5, p. 2. Following this instruction, the agreement states that:

> Claims subject to arbitration include, but are not limited to:
> - claims arising under, arising out of, or relating in any way to any Consumer Contract entered into between you and RAC at any time, and/or any services rendered under or that relate to any such Consumer Contract;
> - claims that arose before the execution of this Agreement or any current or prior Consumer Contract between you and RAC, such as claims related to advertising or disclosures;
> - claims that arise after the termination of any Consumer Contract between you and RAC;
> - claims that are based on any legal theory whatsoever, including negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation or ordinance;
> - except as specified in Paragraph (C) below, claims that are asserted in a lawsuit in court, including class actions in which you are not a member of a certified class, which the defendant (or counterclaim defendant) elects to have resolved by binding arbitration; and
> - except as specified in Paragraph (D) below, any and all disputes relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any contention that all or any part of this agreement to arbitrate is void or voidable.

*Id.*, pp. 2-3.

Alexander's Complaint asserts three federal causes of action against RAC based on RAC's allegedly fraudulent disclosures to CRAs. His claims therefore inherently dispute RAC's contention that he is the Michael Alexander who signed the Agreements and owes payments on RAC account # 8063920006789RO63920. Alexander's claims therefore fall squarely within the arbitration agreement, especially because "[t]he presumption of arbitrability is 'particularly applicable' where the arbitration clause is a broad one.'" *CardioNet*, 751 F.3d at 174 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

## IV.     Conclusion

For the foregoing reasons, RAC's motion to compel arbitration will be GRANTED and this action stayed pending the disposition of the arbitration proceedings.

DATED this 3rd day of July, 2023.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE
